IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In the United States for the Use and Benefit of **BLASTCO INCORPORATED**, a Delaware Corporation, and **BLASTCO INCORPORATED**, a Delaware Corporation in its own capacity Plaintiffs | § § § § § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| **APTIM FEDERAL SERVICES, LLC**, a Louisiana Limited Liability Company; **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA,** a Pennsylvania Corporation Defendants | § § § § § § | JURY REQUESTED |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW Plaintiff, the UNITED STATES OF AMERICA, for the Use and Benefit of **BLASTCO INCORPORATED**, a Delaware corporation, and **BLASTCO INCORPORATED**, a Delaware corporation in its own capacity ("Blastco") and hereby files this Complaint against Defendants **APTIM FEDERAL SERVICES, LLC**, a Louisiana corporation (hereafter "Aptim"), and NATIONAL UNION FIRE INSURANCE COMPANY OF PITSBURGH, PA, a Pennsylvania corporation (hereafter "National Union"), alleging as follows:

## PARTIES

1. Blastco, at all times mentioned herein, was and now is a Delaware corporation duly organized and existing under the laws of the State of Delaware, and authorized and licensed to conduct business as a contractor in the State of Texas. Blastco is a contractor and corporation in good standing, with its principal place of business in Channelview, Texas.

2. On information and belief, and on the basis of such information and belief, Blastco alleges that Defendant Aptim is a single member limited liability company formed under the laws of Louisiana and having a principal place of business in Alexandria, within the State of Virginia. On information and belief, and on the basis of such information and belief, Blastco believes Aptim is a licensed contractor in good standing. Upon information and belief, Blastco further believes that Aptim was formerly known as, and did conduct business under the names "Shaw Environmental & Infrastructure, Inc," and "CB&I Federal Services LLC." Defendant, APTIM FEDERAL SERVICES, LLC, may be served by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3. On information and belief, and on the basis of such information and belief Blastco alleges that defendant National Union is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania with its principle place of business in New York, and authorized to transact business as a surety upon bonds or undertakings. Defendant, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, is a duly incorporated insurance company, authorized to do business in and doing business in the State of Texas. Defendant, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, may be served by serving its registered agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

4. Upon information and belief, Blastco further alleges that at all relevant times, Defendants Aptim and National Union, and each of them, acted as the agents of every other Defendant, and in doing the things herein alleged were acting within the course and scope of their authority.

## JURISDICTION

5. Jurisdiction of this Court is invoked pursuant to the Miller Act, *40 U.S.C. § 3131* through *§ 3134*.

6. The Court has original and exclusive jurisdiction over this matter by virtue of the provisions of the Miller Act and pursuant to *Title 28, United States Code section 1331* in that at least one of the claims for relief contained herein arises under the laws of the United States of America ("USA").

7. This Court has subject matter jurisdiction pursuant to *28 U.S.C. § 1331* and the provisions of the Miller Act, *40 U.S.C. § 3133*.

8. The Court has pendant jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to *28 U.S.C. § 1367*.

## VENUE

9. The contract which is the subject of this action was entered into in Channelview Texas, and a substantial part of the events and omissions giving rise to this claim occurred therein. Venue is therefore proper within the Southern District of the State of Texas and lies in the United States District Court for the Southern District [Houston Division] pursuant to *40 U.S.C. § 3133(b)(3)(B)* and *28 U.S.C. § 1391(b)(2)*.

## GENERAL ALLEGATIONS AND FACTS

10. Blastco alleges, on information and belief, that at all times relevant hereto, Aptim has been engaged in the business of being a contractor and has been qualified to do, and has been doing so.

11. Blastco alleges, on information and belief, that on or about August 28, 2015, defendant Aptim was awarded a contract by the USA, through the United States Department of

the Navy, more particularly identified and known as Naval Facilities Engineering and Expeditionary Warfare Center Contract N62583-09-D-0130-0021 (the "**Prime Contract**"), to provide services including to clean, inspect, and repair Storage Tanks at Naval Base Guam. (hereafter the "**Project**").

12. Blastco alleges, on information and belief, that the Prime Contract required that Aptim secure performance and payment bonds, running in favor of the USA.

13. Blastco alleges, on information and belief, that starting on or about November 10, 2011, Aptim (at the time it conducted business under its former name "Shaw Environmental & Infrastructure, Inc.") as principal, and National Union, as surety, executed and delivered a Payment Bond in the amount of $2,198,442.00, as well as a subsequent consent of surety in the amount of $750,583.00 (at the time it conducted business under its former name "CB&I Federal Services LLC.") for a total sum of at least $2,949,025 (collectively, the "**Payment Bond**" attached hereto as "**Exhibit 1**" and "**Exhibit 2**" respectively).

14. Said Payment Bond guaranteed payment to all persons/entities supplying labor and material in the prosecution of the work provided for in and pertaining to the Prime Contract and any and all duly authorized modifications thereof, which said bond was executed and delivered as aforesaid in accordance with the provisions of the Miller Act.

15. Blastco alleges, on information and belief, that accordingly National Union agreed to be bound and be liable "jointly and severally" with Aptim to make payment(s) to all persons/entities having a direct contractual relationship with Aptim or to any subcontractor of Aptim who furnished labor, material, or both in the prosecution of work provided for in the Prime Contract, in the event that Aptim failed to make prompt payment to such persons/entities.

16. On or about October 31, 2017 Aptim, in its capacity as Prime Contractor, contracted with Blastco, in its capacity as a subcontractor, to furnish labor, materials, and equipment required to complete certain work included in the Prime Contract for coating repairs on Storage tanks, valves and pipes, including Tank Number 14 at Andy II Tank Farm, Joint region

Marianas, Andersen AFB, Guam. (hereafter, the "Subcontract," and attached hereto as "**Exhibit 3**").

17. Blastco also furnished electricity, lighting, compressed air, ventilation, and other equipment as needed for the Project.

18. In return for the work done by Blastco pursuant to the Subcontract, Aptim agreed to compensate Blastco the original amount of $1,336,200.00.

19. During the course of performance of the Subcontract, a series of change orders were presented by Blastco to Aptim, to compensate Blastco for such extra work, labor and services to be performed by Blastco that was necessitated as a result of circumstances, outside the scope of the Subcontract, outside Blastco's control and/or at the sole and specific direction of Aptim.

20. Such extra work, labor and services, reflected in the change orders, were furnished to be used, and in fact were used, in the prosecution of the work necessary for the Prime Contract. These were comprised of at least 10 change orders including change orders 1, 2, and 4 through 11 (hereafter the "**Change Orders**" summarized on "**Exhibit 4**" attached hereto) totaling $1,843,240.87.

21. These Change Orders were a direct result of incidents and services outside the scope of the Subcontract, wholly outside of Blastco's control and primarily a result of Aptim's requests and/or conduct, for which Blastco has an absolute right to recover and receive full compensation.

22. The basis for the Change Orders included, but were not limited to, Blastco providing pre-inspection blasting of welds outside the scope of the Subcontract, labor resulting from the discovery of pinholes in the existing welds, re-coating of welds, welding repairs and spot blasts outside the scope of the Subcontract, ongoing scaffold support for Aptim welders during weld repairs outside the scope of the Subcontract, and significant unanticipated labor and material costs, delays, and expenses due to differing conditions caused by Aptim's failure to supply correct specifications, site conditions, and correct information about the Tank's conditions.

23. Furthermore, the Change Orders and costs therein were necessitated by unilateral stand down orders made by Aptim, resulting in delays not contemplated in the project schedule or Subcontract, requiring the need for unnecessary demobilization/remobilization by Blastco, and deterioration of work and/or partial work that Blastco had performed or had started to perform which needed to be redone due to Aptim's unilateral stand down orders.

24. The Change Orders further included labor and costs that were a result of Force Majeure events that Blastco also had an absolute right to recover on, based on the express terms of the Subcontract, including section 23.4, as well as under 48 CFR § 52.249-8(c) which states "the Contractor shall not be liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (1) acts of God or of the public enemy."

25. These events and factors outside of Blastco's control, set forth above and herein, and that were outside the scope of the Subcontract, are in no way an exhaustive list of the basis for the additional costs, expenses, labor, delays, and work Blastco had to incur. These events addressed herein, that were wholly outside the control of Blastco, also resulted in the delay of the Subcontract work and Project being completed. At all times, Aptim was aware of the additional services being provided by Blastco, was aware that the services were well outside the scope of the Subcontract, and was aware of the anticipated cost of the additional services that Blastco provided. Aptim permitted and gladly accepted these additional services Blastco was required to provide. Aptim never objected to any of the services or Change Orders provided by Blastco, and repeatedly assured Blastco that it would be fully paid for these additional services that were outside the scope of, and not contemplated by, the terms of the Subcontract.

26. The extra work, and costs, had the net effect of increasing the total Subcontract amount to $3,179,440.87, which was the reasonable worth and value of the total work performed by Blastco.

27. Blastco performed all its obligations and duties under the Subcontract, including as reflected in the Change Orders, and Aptim agreed to pay Blastco for all said labor and services.

6

28. Said work, services and labor was completed by Blastco on or about July 12, 2019, all of which was furnished, done and provided by Blastco in furtherance of the Project.

29. The $3,179,440.87, which was the amount owed by Aptim to Blastco has become due and owing. Aptim has only paid Blastco $1,070,197.00, leaving $2,109,243.87 still due and owing. The amount at issue is well in excess of the Miller Act's monetary statutory requirements.

30. Blastco has made several demands for payment of the outstanding amount due and owing, but Aptim has failed and/or refused to pay Blastco.

31. Aptim has failed and/or refused to pay Blastco, thus breaching its contractual obligations.

32. Blastco is also informed and believes and thereon alleges that Aptim has been paid its funds from the Department of the Navy through December, 2019 for a total of $8,971,832.93. Blastco is also informed and believes, and thereon alleges that there is only $702.07 still held by the USA that is owed to the Prime Contractor Aptim. Accordingly Defendant Aptim has virtually been paid in full on the Prime Contract.

33. Accordingly, Aptim has also failed to pay Blastco its share of these funds in violation of *31 U.S.C.S. § 3905(b)*.

34. *31 U.S.C.S. § 3905(b)* states in pertinent part that "[e]ach construction contract awarded by an agency shall include a clause that requires the prime contractor to include in each subcontract for property or services entered into by the prime contractor and a subcontractor (including a material supplier) for the purpose of performing such construction contract--(1) a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract; and (2) an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection--(A) for the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

(B) computed at the rate specified by section 3902(a) of this title." Accordingly Blastco is entitled to said funds and interest thereon.

## FIRST CAUSE OF ACTION

### (For Breach of Contract Against Aptim)

35. Blastco realleges and incorporates the allegations contained in paragraphs 1-35 above as if fully set forth herein.

36. Blastco performed all of its duties, conditions, promises, and obligations in full under the terms, conditions and covenants of the Subcontract, including pursuant to the necessary Change Orders.

37. Despite Blastco fulfilling all of its duties and obligations under the Subcontract and Change Orders, Aptim breached its obligations by failing and/or refusing to pay Blastco the full amount owed for labor, services, and materials furnished as part of the Subcontract and Change Orders.

38. Said labor, services, and materials furnished by Blastco were for the prosecution of the work provided in the Prime Contract and required for the completion of the Project.

39. Blastco is informed and believes and thereon alleges that Aptim has been paid all funds owed to it by the owner Government except for a mere $702.07. Accordingly, Blastco is informed and believes and thereon alleges that Aptim has received full payment – save $702.07 - from the Department of the Navy totaling $8,971,832.93.

40. Aptim has failed and/or refused to pay Blastco its share of these funds in violation of 31 U.S.C.S. § 3905(b).

41. Aptim has not been excused in law, equity or otherwise of its obligations to pay Blastco for the full amount of $3,179,440.87 Aptim owes. Aptim has only paid a portion of said amount, leaving $2,109,243.87 still due and owing to Blastco.

42. On multiple occasions, Blastco has demanded payment for the aforementioned amount still owed to it by Aptim.

43. Aptim has failed, refused, and continues to fail to pay Blastco, thus breaching its contractual obligations to Blastco.

44. Aptim's failure and or refusal to pay the remaining sum has caused Blastco to suffer damages as a direct and proximate result of Aptim's breaches of contract for an amount of at least $2,109,243.87, which reflect those monies still due and owing to Blastco from Aptim.

45. In addition, Blastco has also incurred incidental and consequential damages as a result of Aptim's breaches in an amount which is not yet fully known or calculated.

46. Accordingly, as a result of Aptim's breaches, Blastco has suffered damages and is entitled to economic damages for outstanding payments still owed by Aptim to Blastco, consequential damages, attorney's fees and costs, statutory damages, as well as interest which Blastco is entitled to recover from Aptim in accordance with applicable law.

## SECOND CAUSE OF ACTION

**(Miller Act Payment Bond against all Defendants)**

47. Blastco re-alleges and incorporates the allegations contained in paragraphs 1-47 above as if fully set forth herein.

48. Blastco alleges, on information and belief, that starting on or about November 10, 2011, Aptim (under its former name of Shaw Environmental & Infrastructure, Inc.) as principal, and National Union, as surety, executed and delivered a Payment Bond in the amount of $2,198,442.00. Blastco alleges, on information and belief, that Aptim also (at the time it conducted business under another former name "CB&I Federal Services LLC.") as principal, and National Union, as surety, executed and delivered a subsequent consent of surety in the amount of $750,583.00 causing the total sum of the payment bond to be at least $2,949,025.00 (see, "**Exhibit 1**" and "**Exhibit 2**" respectively).

49. The Payment Bond guaranteed payment to all persons/entities supplying labor and material, including subcontractor Blastco, in the prosecution of the work provided for and pertaining to the Project and any and all duly authorized modifications of services, including by way of Change Orders, in furtherance thereof.

50. The Payment Bond was executed and delivered as aforesaid in accordance with the provisions of the Miller Act.

51. National Union is obligated, pursuant to the Payment Bond, to pay Blastco for the labor, materials, and services Blastco furnished in the prosecution of the work provided for in the Prime Contract, but for which Aptim failed to make payments to Blastco. See, "__Exhibit 1__" and "__Exhibit 2__").

52. Blastco is entitled to make a claim on the above-referenced Miller Act Payment Bond, as it is in the class of subcontractors and suppliers entitled to the benefits of said Payment Bond, and has met all procedural prerequisites for the timely filing of this action.

53. Accordingly, as the Payment Bond is for the benefit of Blastco, it is entitled to payment from National Union as a beneficiary of the Payment Bond, pursuant to the Miller Act, _40 U.S.C. § 3133_, for outstanding sums owed.

## THIRD CAUSE OF ACTION

### (For Quantum Meruit against Aptim)

54. Blastco re-alleges and incorporates the allegations contained in paragraphs 1-54 above as if fully set forth herein.

55. Blastco provided valuable labor, services, and materials that were necessary for Aptim to perform and complete its obligations and duties under the Prime Contract and in furtherance of the Project.

56. Aptim benefited from Blastco's work, labor, services, and materials, under the Subcontract and Change Orders, including but not limited to the fact that Aptim could not have fully performed and completed its obligations under the Prime Contract in the absence of the work that Blastco provided as well as the fact that Aptim could not have and would not have received payment from the owner in the absence of the work that Blastco performed.

57. Aptim has failed and refused to pay Blastco for Blastco's labor, services, and materials referenced herein, despite Aptim receiving the full benefits thereof.

58.     As such Blastco has suffered damages and Aptim has been unjustly enriched as a result of Aptim's failure to pay Blastco.

## FOURTH CAUSE OF ACTION

(Common Count - Account Stated - **against Aptim**)

59.     Blastco re-alleges and incorporates the allegations contained in paragraphs 1-59 above as if fully set forth herein.

60.     Within the last three (3) years, Aptim became indebted to Blastco for the agreed sum of $3,179,440.87 for labor, services, and/or materials provided by Blastco to Aptim.

61.     Aptim agreed to pay said sum in full, but paid only a portion of said sum, although demand therefore has been made by Blastco, and there is now due, owing, and unpaid the principal sum of $2,109,243.87 plus interest and fees thereon.

## FIFTH CAUSE OF ACTION

(Common Count – Open Book Account - **against Aptim**)

62.     Blastco realleges and incorporates the allegations contained in paragraphs 1-62 above as if fully set forth herein.

63.     Within the last three (3) years, Aptim became indebted to Blastco for the agreed sum of $3,179,440.87 for labor, services, and/or materials provided by Blastco to Aptim at Aptim's insistence.

64.     Aptim agreed to pay said sum in full, but paid only a portion of said sum, although demand therefore has been made by Blastco, and there is now due, owing, and unpaid the principal sum of $2,109,243.87, plus interest and fees thereon.

## JURY DEMAND

65.     Blastco Incorporated demands that this case be tried by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Blastco prays for relief as follows:

**On the First Cause of Action**

11

### For Breach of Contract Against Aptim

1. Against defendant Aptim, judgment in the principal sum of $2,109,243.87;

2. For an interest penalty at the rate specified in [31 U.S.C.S. § 3902(a)](#);

3. For interest thereon at the maximum rate allowed by law according to proof;

4. For incidental and consequential damages according to proof; and

5. For attorney's fees according to proof.

### On the Second Cause of Action

### Miller Act Payment Bond against all Defendants

1. Against defendant National Union and Aptim, jointly and severally, judgment in the principal sum of $2,109,243.87;

2. For an interest penalty at the rate specified in [31 USC section 3902(a)](#);

3. For interest thereon at the maximum rate allowed by law according to proof; and

4. For attorney's fees according to proof.

### On the Third Cause of Action

### For Quantum Meruit Against Aptim

1. For the reasonable value of the labor, services, and materials provided, in an amount to be proven at trial, but not less than $2,109,243.87; and

2. For interest thereon at the maximum rate allowed by law according to proof.

### On the Fourth and Fifth Causes of Action

### Common Count - Account Stated and Common Count - Open Book Account Against Aptim

1. Judgment in the principal sum of $2,109,243.87; and

2. For interest thereon at the maximum rate allowed by law according to proof.

### On all Claims for Relief:

1. For attorneys' fees and costs of suit; and

2. For such other and further relief, both general and special, at law or in equity, as the court may deem just and proper to fully compensate Blastco Incorporated.

                                  **LAW FEEHAN ADAMS, LLLP**

By: /s/ *Robert L. Adams*
     Robert L. Adams
     Attorney-in-Charge
     Fed. ID #5972
     Texas Bar No. 00878000
     550 Westcott Street, Suite 250
     Houston, Texas 77007
     713.652.6000
     713.652.6001 fax
     LAdams@LawFeehanAdams.com

**ATTORNEYS FOR PLAINTIFFS**